## THE HARVEY D. GOULDER.

### HAWGOOD TRANSIT CO. v. GREAT LAKES TOWING CO.

(District Court, N. D. Ohio, E. D. January 13, 1914.)

#### No. 2468.

TOWAGE (§ 11*)—INJURY TO TOW—LIABILITY OF TUG.

An injury to a steamer by striking against the abutment of a bridge while being towed through the draw *held* not due to any fault of the tug but to the fault of the master of the steamer in failing to comply with the direction of the master of the tug to put a man with a line on shore to hold steamer straight while passing through the draw.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

In Admiralty. Suit by the Hawgood Transit Company against the Great Lakes Towing Company. Decree for respondent.

Goulder, Holding & Masten, of Cleveland, Ohio, for libelant.

Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio, for respondent.

DAY, District Judge. At about 3 o'clock p. m. on May 19, 1908, the tug Harvey D. Goulder was called by the master of the steamer Harvey D. Goulder to assist the steamer from its place of mooring at the shipyard in the harbor of Lorain to the coal dock on the west side of the river at Lorain. With the exception of a slight rain, the weather was fair; there being no wind. The steamer was lying head upstream, with her port side to the dock, and, upon the arrival of the tug, it was agreed between the master of the steamer and the master of the tug that the steamer should run a line from her starboard bow to the west bank of the river, in order to keep the steamer straight in the channel, while going through the draw of the Erie avenue bridge further down the river. This bridge lies between the shipyard and the coal dock to which the steamer was destined. Before taking the steamer in tow the tug took a man from the steamer to the west bank of the river and placed him on the west bank of the river at a point about amidships of the steamer. This man had with him a heaving line. The tug took a harbor line furnished by the steamer, and, after the line from the

steamer had been cast off, proceeded to tow the steamer stern first down the river. When the stern of the steamer had entered the draw of the bridge, the steamer's bow was swinging to the eastward, thereby throwing her stern up to westward and toward the west abutment of the bridge. At this point the tug put her heel to port in an effort to pull the stern of the steamer away from the west abutment of the bridge. The tow line parted, and the stern of the steamer, continuing to swing to the westward, struck the west abutment of the bridge, doing some slight damage to both the bridge and the steamer.

It is urged on behalf of the steamer that the damages were occasioned by reason of the fact that the steamer was negligently towed, in that the tug maintained excessive speed and was not under control, and that the parting of the line was the result of the previous improper navigation of the vessel, making extreme measures necessary, and the negligence of the engineer in so recklessly handling his engine as to fetch up on a good line that would ordinarily withstand such a strain exerted upon it. It is contended on behalf of the steamer that after it had been agreed to put a man on shore on the opposite side of the river with a heaving line, and thereby convey a line from the steamer to the opposite shore, the captain of the tug told the captain of the steamer not to mind the line, and that the captain of the steamer obeyed this instruction. This is denied by the tug.

There is a sharp conflict in the testimony upon this point; the captain of the steamer alone claiming that the order to put out the line was countermanded. The crew of the tug are practically unanimous in saying that no such instructions countermanding the placing of the line were given. It is also contended, on behalf of the steamer, that the captain of the tug could have seen that this line had not been conveyed from the steamer to the opposite bank, and was therefore at fault in maneuvering the tug as he did.

Considering the testimony of all the witnesses, and the surrounding circumstances and the probabilities of the case, I am forced to reach the conclusion that the captain of the tug did not countermand the order to convey the line from the steamer, and I am also of the opinion that, as the steamer reached the point where the man was stationed on the bank, the captain of the tug could not see that this line had not been placed.

The record does not show that the tug was going at an excessive speed at any time; the weight of the testimony indicating that the tug was not proceeding at a rate much in excess of one mile an hour at the time of the occurrence. This fact has corroboration in that the steamer was not damaged to any great extent, nor was the bridge.

Under a contract which the company operating the steamer had with the company operating the tug, it was incumbent upon the steamer to furnish a line for towage which should be sufficient for the service. It appears that the line was given an inspection by those charged with the operation of the steamer, and it also appears that, from such an examination as it was possible for those operating the tug to make, it did not appear in either instance that the line was in any way insufficient. In any event, had the instructions of the captain of the tug

been obeyed, there would have been no necessity to have put any unusual strain upon this line, and the accident would not have happened.

I am of the opinion that the damage to the steamer Goulder was occasioned by the captain of the steamer failing to ·put the line across the river from the bow of the steamer, and I do not find that the tug was in any way at fault.

The libel will accordingly be dismissed.